UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

IN RE: MIKE HOOKS LLC AS OWNER : CASE NO. 2:20-CV-00959
AND/OR OWNER PRO HAC VICE OF
THE DREDGE "E. STROUD" :

: JUDGE JAMES D. CAIN, JR.

: MAGISTRATE JUDGE KAY

MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 31] filed by Mike Hooks LLC and seeking dismissal of plaintiff/claimant Charles McCoy's claim for maintenance and cure. McCoy opposes the motion. Doc. 33.

I.
BACKGROUND

This lawsuit arises from incidents that occurred on the dredge vessel E. STROUD, owned by limitation plaintiff Mike Hooks LLC ("Hooks"). Claimant Charles McCoy served as second cook on the E. STROUD. He alleges as follows: On December 28, 2018, while the vessel was at work in navigable waters in the state of Louisiana, McCoy was moving boxes of food aboard the E. STROUD and injured his back when a crewmember threw a heavy box to him. Doc. 14, p. 8. Even though he reported his injury to his employer, he did not receive adequate treatment or accommodations and was called back to work early with the knowledge that he had an injured back. *Id.* at 8–9. He returned to work on January 10, 2019, while the vessel was performing maintenance dredging at a facility

owned by Alabama Shipyard LLC ("ASY") in Mobile, Alabama. *Id.*; *see* doc. 37. He was promptly reinjured attempting to board the E. STROUD, when he stepped through rusty grating on ASY's dock. Doc. 14, p. 9. The second accident, which McCoy alleges was caused by Hooks and ASY's joint negligence, caused severe and permanent injuries to McCoy's leg, back, and foot, requiring weeks of hospitalization. *Id.*

McCoy filed suit against ASY and Hooks in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana. Doc. 1, p. 2. Hooks then filed this limitation action, seeking to limit its liability for both accidents to the value of the E. STROUD and its freight then pending, at an alleged $1.2 million. *Id.* ASY and McCoy both filed claims, with McCoy asserting that he is a Jones Act seaman entitled to damages from Hooks, his employer, as a result of the injuries he sustained from Hooks's negligence. Docs. 9, 14. Hooks now brings this motion for partial summary judgment, asserting that McCoy's claim for maintenance and cure arising from the December 2018 accident—including benefits already paid by Hooks—fails under the *McCorpen* defense because he concealed his history of neck and back problems on his employment application. Doc. 31. McCoy opposes the motion. Doc. 33.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact.

*Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

A seaman injured in the service of his vessel is entitled to maintenance and cure benefits, regardless of whether the vessel owner was at fault or the vessel unseaworthy. *Adriatic Marine, LLC v. Harrington*, 442 F.Supp.3d 929, 935 (E.D. La. 2020) (citing *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36 (1943)). The employer,

however, may investigate a seaman's claim for maintenance and cure benefits, and may deny those claims based on certain legal defenses. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005). One such defense arises under *McCorpen v. Central Gulf Steamship Corporation*, 396 F.2d 547 (1968), when the injured seaman concealed a preexisting medical condition from his employer. *Id.* To prevail on the defense, the employer must show that:

> (1) the seaman intentionally concealed or misrepresented information concerning a prior condition or injury; (2) the misrepresented or concealed information was material to the employer's decision to hire the seaman; and (3) [there is] a causal connection between the non-disclosed injury/condition and an injury/condition complained of in the suit at bar.

*Hare v. Graham Gulf, Inc.*, 22 F.Supp.3d 648, 653 (E.D. La. 2014) (citing *McCorpen*, 396 F.2d at 548–49). However, the defense fails if the vessel owner would have employed the seaman even if the requested disclosure had been made. *Id.* (citing *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006)).

McCoy asserts that Hooks cannot establish any of the above elements.[1] At issue is his alleged failure to disclose a significant history of cervical spine issues on his employment application. On May 14, 2015, over a year before he was hired by Hooks, he was admitted to Texas Regional Medical Center with complaints of shortness of breath and chest pains. Doc. 31, att. 6, p. 2. The attending physician, Dr. Panouseris, noted that McCoy was well known to him and that he was also suffering "severe neck pain radiating into his arms that may be unassociated [with] the chest pains." *Id.* The physician also recorded a

---

[1] He also asserts that Hooks waived the *McCorpen* defense by failing to plead it. However, Hooks conspicuously raised *McCorpen* as its seventh defense to McCoy's claim. Doc. 15, p. 4. Therefore this argument has no merit.

history of spinal degenerative disk disease and present painful range of motion in McCoy's neck. *Id.* at 3–4. During the hospital stay McCoy received a neurosurgical consultation for his neck pain. Doc. 31, att. 7. The surgeon noted in his history that McCoy had "been complaining of significant pain in different parts of his body including his neck, lower back, and also . . . into his arm in the C7 distribution" and that McCoy attributed this pain to a car accident in August 2013. *Id.* at 2. An MRI showed cervical spondylosis with cervical disk herniation at C6–C7, and the neurosurgeon recommended an anterior cervical discectomy and fusion once his current illness had resolved. *Id.* at 2–4. McCoy's discharge summary from May 19, 2015, indicates that the recommendation was communicated to him and that he was considering it, with a plan to follow up with the neurosurgeon in four weeks. Doc. 31, att. 8. At an office visit in August 2015, Panouseris again noted McCoy's history and symptoms of cervical spine issues as well as his willingness to proceed with surgery once medically cleared. Doc. 31, att. 9. There is no further record of treatment or consultation for McCoy's neck or back before he was hired by Hooks.[2]

McCoy was hired as a cook by Hooks on October 5, 2016. Doc. 31, att. 3. On September 29, 2016, he completed a Post-Employment Employee Health Survey. Doc. 31, att. 4. He checked "No" when asked whether he had ever had an injury requiring a doctor's care to his "Back: upper, lower, and mid-back." *Id.* at 3. On the same section, he checked "yes" for "Neck, shoulders" but only specified rotator cuff surgeries in 2005 and 2009. *Id.* at 3. He was also asked to circle any condition he "had ever had problems with or sought

---

[2] McCoy sought treatment for neck and back pain in October/November 2017 and February/March 2019. *See* doc. 31, atts. 11–16.

medical treatment" for. *Id.* He marked "Diabetes," "High or Low Blood Pressure," "Neck or Shoulder Problems," "Pneumonia," and "Vision Problems/Glasses" but neglected to mark "Back Trouble" or "Spinal Issues." *Id.* Under the prompt "Please explain all answers circled," he only listed his medications for hypertension and Type 2 diabetes. *Id.*

McCoy signed this form, indicating that he understood any falsification could result in a forfeiture of worker's compensation benefits. *Id.* at 4. On the same date he also completed a Medical Examination Report Form, which he signed certifying that the information was "accurate and complete." Doc. 31, att. 5. Here he answered "No" to questions asking if he had ever had "neck or back problems" or "bone, muscle, joint, or nerve problems," but disclosed his rotator cuff surgeries and history of blood pressure issues and diabetes. *Id.*

As described above, a defendant must establish all three elements of the *McCorpen* defense in order to show that it is not liable for maintenance and cure. Therefore Hooks will not be entitled to summary judgment if McCoy can show an issue of fact as to any element. On the first, McCoy argues that he did not intentionally conceal his condition. In his deposition he first testified that he did not recall any such neck problems and then, when confronted with medical records, asserted that he only understood certain questions to be asking about surgeries and believed that he had adequately disclosed his neck pain by marking selections for "neck and shoulder." *See generally* doc. 33, att. 2, pp. 13–14, 24–25, 49–53. The responses raise questions about his credibility, but those questions are beyond the court's remit on a motion for summary judgment. Besides, "[t]he intentional concealment prong of the *McCorpen* defense does not require subjective

intent to conceal. The employer need only show that the seaman failed to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information." *Meche v. Doucet*, 777 F.3d 237, 247 (5th Cir. 2015) (cleaned up). Here the Employee Health Survey form ambiguously groups "neck" with "shoulder," and the medical records show that most of McCoy's symptoms from his cervical spine compression were concentrated in his neck and arms. McCoy's failure to mark back issues on that form does not amount to a concealment of his cervical spine problems. On the Medical Examination Report Form, however, McCoy failed to mark both "neck or back problems" and "bone, muscle, joint, or nerve problems." Even viewing any ambiguities in the forms and in McCoy's responses in a light most favorable to him, the court finds that McCoy failed to supply information concerning a prior medical condition that the employer plainly desired. Hooks has thus met its burden on the first element of the defense.

On the second element, Hooks has produced evidence of the job's physical requirements and a declaration from its human resources recruiter, who states that the company would have conducted further screening had McCoy disclosed his condition. Doc. 31, atts. 2, 19, 20. McCoy disputes this evidence and requests, in the alternative, that he be given additional time to depose the human resources recruiter. The court finds no need to delay ruling, however, because Hooks has not met its burden on the third element.

In order to establish the final element of the *McCorpen* defense, the defendant must show "a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *McCorpen*, 396 F.2d at 549. The injuries need not be "identical," and the previous injury need not be the "sole cause" of the present one in order

7

to satisfy this prong. *Brown*, 410 F.3d at 176. Instead, it is enough that they occur in the same location. *See id.* at 176–77.

In satisfaction of the causality element, Hooks only points to McCoy's deposition testimony that the December 2018 accident had resulted in injuries to his "neck and back." *See* doc. 33, att. 2, p. 15. There are no medical records establishing where the actual injury from the December 2018 accident occurred. Construing all evidence in the light most favorable to McCoy, and to the extent that the injury might have occurred in an entirely separate region of the spine and caused radiating pain to another, the court does not regard the deposition testimony as sufficient to establish a causal link. Accordingly, Hooks has not met its burden on the third element of this defense.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 31] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 24th day of August, 2021.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**