UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**IN RE: MIKE HOOKS LLC**              **CASE NO.  2:20-CV-00959**

                                       **JUDGE JAMES D. CAIN, JR.**

                                       **MAGISTRATE JUDGE KAY**

### MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 48] filed by limitation plaintiff Mike Hooks LLC ("Hooks") and seeking dismissal of claimant Charles McCoy's claims for maintenance and cure. McCoy opposes the motion. Doc. 58.

### I.
#### BACKGROUND

This suit arises from injuries that occurred on the dredge vessel E. STROUD, owned by Hooks, where McCoy was then employed as a second cook. McCoy has alleged as follows: On December 28, 2018, while the vessel was at work in navigable waters in the state of Louisiana, McCoy was moving boxes of food aboard the E. STROUD and injured his back when a crewmember threw a heavy box to him. Doc. 14, p. 8. Even though he reported his injury to his employer, he did not receive adequate treatment or accommodations and was called back to work early with the knowledge that he had an injured back. *Id.* at 8–9. He returned to work on January 10, 2019, while the vessel was performing maintenance dredging at a facility owned by Alabama Shipyard LLC ("ASY") in Mobile, Alabama. *Id.*; *see* doc. 37. He was promptly reinjured attempting to board the

E. STROUD, when he stepped through rusty grating on ASY's dock. Doc. 14, p. 9. The second accident, which McCoy alleges was caused by Hooks and ASY's joint negligence, caused severe and permanent injuries to McCoy's leg, back, and foot, requiring weeks of hospitalization. *Id.*

McCoy filed suit against ASY and Hooks in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana. Doc. 1, p. 2. Hooks then filed this limitation action, seeking to limit its liability for both accidents to the value of the E. STROUD and its freight then pending, at an alleged $1.2 million. *Id.* ASY and McCoy both filed claims, with McCoy asserting that he is a Jones Act seaman entitled to damages from Hooks, his employer, as a result of the injuries he sustained from Hooks's negligence. Docs. 9, 14.

Hooks then filed a motion for partial summary judgment on its *McCorpen* defense, arguing that it was entitled to reimbursement of all maintenance and cure payments made to McCoy because he had concealed a history of neck and back problems in his employment application. Doc. 31; *see McCorpen v. Central Gulf Steamship Corporation*, 396 F.2d 547 (5th Cir. 1968). McCoy opposed the motion. Doc. 33. The court found that Hooks satisfied the first element of the defense by showing that McCoy concealed this history. It denied summary judgment, however, based on Hooks's failure to satisfy the third element ("a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage," *McCorpen*, 396 F.2d at 549). Because Hooks had not met its burden on this element, the court also declined to evaluate whether it had met the second element (that the misrepresentation or concealment was material to the employer's decision to hire the seaman). Doc. 40.

After conducting additional discovery, Hooks has filed this second Motion for Partial Summary Judgment [doc. 48] and argues that it can meet its burden on the remaining two elements of the *McCorpen* defense. McCoy again opposes the motion. Doc. 58.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v.*

*Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### LAW & APPLICATION

Under *McCorpen v. Central Gulf Steamship Corporation*, 396 F.2d 547 (5th Cir. 1968), an employer may raise a defense to its obligation of maintenance and cure to an injured seaman by showing that the seaman concealed a preexisting medical condition. *Id.* To prevail on the defense, the employer must show that:

> (1) the seaman intentionally concealed or misrepresented information concerning a prior condition or injury; (2) the misrepresented or concealed information was material to the employer's decision to hire the seaman; and (3) [there is] a causal connection between the non-disclosed injury/condition and an injury/condition complained of in the suit at bar.

*Hare v. Graham Gulf, Inc.*, 22 F.Supp.3d 648, 653 (E.D. La. 2014) (citing *McCorpen*, 396 F.2d at 548–49). However, the defense fails if the vessel owner would have employed the seaman even if the requested disclosure had been made. *Id.* (citing *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006)). The court has already found the first element satisfied in this case[1] and so Hooks's current motion turns on its ability to meet its burden on the second and third elements.

---

[1] In opposition to this motion McCoy argues that there is a genuine issue of material fact as to whether he concealed his history of neck problems because he marked "Yes" in response to a question asking about a history of neck or shoulder problems. As the court pointed out in its prior ruling, however, McCoy only disclosed a prior rotator cuff surgery in the space provided to explain his answer and answered "No" in response to a question asking about a history of neck or back problems, though his records reveal a significant history of cervical spine issues and a recommendation for surgery less than two years before he was hired by Hooks. Doc. 40. On these facts the court finds no ambiguity regarding the misrepresentations made by McCoy in his employment application.

On the second element, "[t]he fact that an employer asks a specific medical question on an application, and that application is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purposes of this analysis." *Brown v. Parker Offshore Drilling Corp.*, 410 F.3d 166, 175 (5th Cir. 2005). McCoy does not dispute that the health forms sought information on, among other things, his history of neck and back issues. Instead, he points to an admission from Hooks's corporate representative that the company left decisions on medical fitness to its doctor and that a disclosure of a history of neck or back pain would not necessarily have made McCoy ineligible for his position. Doc. 58, att. 2. McCoy also emphasizes that he passed his employment physical, which included a fitness evaluation, X-rays, and an MRI of his lumbar spine. *See* doc. 33, att. 3.

As Hooks points out, however, the job duties as set forth in the Safe Job Procedures and General Safety Rules include lifting heavy objects and specifically involve unloading groceries and moving them on stairs. Doc. 31, atts. 19 & 20. The questions provided on the Health Survey, relating to McCoy's history of neck and back ailments, were rationally related to these functions. Accordingly, Hooks satisfies the materiality element with respect to the concealed information. The fact that disclosure would not necessarily have rendered McCoy ineligible and may only have prompted further investigation does not defeat this element, either. As the Eastern District recently observed, courts in this circuit have repeatedly granted summary judgment on the *McCorpen* defense "when the evidence establishes that full disclosure of the plaintiff's medical condition would have prompted his employer to conduct further medical evaluation prior to making a hiring decision."

*White v. Sea Horse Marine, Inc.*, 2018 WL 3756475, at *3 (E.D. La. Aug. 8, 2018) (collecting cases). Hooks has offered the declaration of its human resources recruiter, who states that the company relied on the information supplied in the Health Survey and would have required further medical information and evidence of McCoy's capabilities had he disclosed his significant history, summarized below and in the previous ruling. Doc 31, att. 2, ¶ 16. Hooks has thus satisfied this element of its defense.

On the third element, Hooks must show that a causal connection between the previous injuries or condition and the present injury. *Hare*, 22 F.Supp.3d at 653. The inquiry here "is simply whether the new injury is related to the old injury, irrespective of their root causes." *Johnson v. Cenac Towing, Inc.*, 599 F.Supp.2d 721, 728–29 (E.D. La. 2009). This test is satisfied where, for example, the injuries are to the same location on the spine. *Id.* at 728 (citing *Brown*, 410 F.3d at 176).

McCoy's pre-December 2018 medical history shows a well-documented record of injuries to his neck, mid-back, and lower-back, including protrusion/herniation at C3-4 and C5-6, protrusion/herniation at C6-7, anterolisthesis at L5-S1, osteoarthritis at L1 and C5-7, and osteophytes at C5, C6, and C7, protrusion/herniation at L5-S1, cervical hyperlordosis, lumbar hyperlordosis, vertebral body rotation in the cervical, thoracic, and lumbar spine, disc height reduction at C6-7, traumatic injury of the cervical and lumbar spine with tearing of the regional supportive tissue, and resulting disc displacement, joint stiffness, muscle spasm, pain, nerve root irritation, and segmental dysfunction. *See* doc. 31, atts. 6–14. His post-accident treatment has included anterior microdiscectomies and lumbar laminectomies at the same regions, and his post-accident films show disc bulges in the

cervical spine at C4 through C7 as well as possible left foraminal narrowing at C6 through T1. Doc. 31, att. 5; doc. 49, att. 14. McCoy offers no opposition to this element and instead argues in the alternative that the court should decline to address the maintenance and cure claims because they are not subject to limitation of liability. Accordingly, he requests that the court defer this issue to the underlying state court litigation.

On the above evidence the court finds Hooks's burden satisfied with respect to the third element of the *McCorpen* defense. As for McCoy's request to defer the issue to state court, the matter has twice been brought to this court on summary judgment and fully briefed. The defense is regularly litigated in limitation suits filed in federal court. *E.g.*, *Matter of Teon Maria, LLC*, 2021 WL 124553 (E.D. La. Jan 13, 2021); *Alexander v. CHS Inc. of Minn.*, 2018 WL 3548484 (E.D. La. July 24, 2018). Deferring resolution to the state court would allow McCoy to continue receiving maintenance and cure even after Hooks has successfully proven he is not entitled to it. Accordingly, there is no sound reason for deferring judgment.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 48] will be **GRANTED**.

**THUS DONE AND SIGNED** in Chambers this 19th day of July, 2022.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**