UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

IN RE: MIKE HOOKS LLC　　　　　　　CASE NO. 2:20-CV-00959

　　　　　　　　　　　　　　　　　　JUDGE JAMES D. CAIN, JR.

　　　　　　　　　　　　　　　　　　MAGISTRATE JUDGE KAY

MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 63] filed by limitation plaintiff Mike Hooks LLC ("Hooks") and seeking dismissal of claimant Charles McCoy's Jones Act and general maritime claims arising from an accident that occurred on December 28, 2018. McCoy opposes the motion. Doc. 67.

I.
BACKGROUND

This suit arises from an incident that occurred on the dredge vessel E. STROUD, owned by Hooks, where McCoy was then employed as a second cook. McCoy has alleged as follows: On December 28, 2018, while the vessel was at work in navigable waters in the state of Louisiana, McCoy was moving boxes of food aboard the E. STROUD and injured his back when a crewmember threw a heavy box to him. Doc. 14, p. 8. Even though he reported his injury to his employer, he did not receive adequate treatment or accommodations and was called back to work early with the knowledge that he had an injured back. *Id.* at 8–9. He returned to work on January 10, 2019, while the vessel was performing maintenance dredging at a facility owned by Alabama Shipyard LLC ("ASY")

in Mobile, Alabama. *Id.*; *see* doc. 37. He was promptly reinjured attempting to board the E. STROUD, when he stepped through rusty grating on ASY's dock. Doc. 14, p. 9. The second accident, which McCoy alleges was caused by Hooks and ASY's joint negligence, caused severe and permanent injuries to McCoy's leg, back, and foot, requiring weeks of hospitalization. *Id.*

McCoy filed suit against ASY and Hooks in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana. Doc. 1, p. 2. Hooks then filed this limitation action, seeking to limit its liability for both accidents to the value of the E. STROUD and its freight then pending, at an alleged $1.2 million. *Id.* ASY and McCoy both filed claims, with McCoy asserting that he is a Jones Act seaman entitled to damages from Hooks, his employer, as a result of the injuries he sustained from Hooks's negligence. Docs. 9, 14.

Hooks then filed a motion for partial summary judgment on its *McCorpen* defense, arguing that it was entitled to reimbursement of all maintenance and cure payments made to McCoy because he had concealed a history of neck and back problems in his employment application. Doc. 31; *see McCorpen v. Central Gulf Steamship Corporation*, 396 F.2d 547 (5th Cir. 1968). McCoy opposed the motion. Doc. 33. The court found that Hooks satisfied the first element of the defense by showing that McCoy concealed this history but failed to satisfy the third element ("a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage," *McCorpen*, 396 F.2d at 549). Doc. 40. After conducting additional discovery, Hooks filed a second Motion for Partial Summary Judgment [doc. 48] on the *McCorpen* defense. Doc. 58. Over opposition from McCoy, the court granted same and dismissed McCoy's claims for

maintenance and cure arising from the incident alleged to have occurred on December 28, 2018. Docs. 60, 61.

Hooks now brings another motion for partial summary judgment, seeking to dismiss all of McCoy's remaining claims from the incident on December 28, 2018, exempting the claims arising from his cellulitis condition that allegedly arose after the incident on January 10, 2019. Doc. 63, att. 1. To this end it argues that McCoy cannot show the negligence required to hold Hooks liable under the Jones Act or the unseaworthiness required to hold it liable under general maritime law. *Id.*

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

### A. Jones Act Negligence

The Jones Act gives a seaman injured in the course of his employment a cause of action for his employer's negligence. 46 U.S.C. § 30104. The employer's duty under this statute is to "provide his seamen employees with a reasonably safe place to work." *Simmons v. Transocean Offshore Deepwater Drilling, Inc.*, 551 F.Supp.2d 471, 475 (E.D. La. 2008) (citing *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989)). An employer breaches that duty if it fails to exercise ordinary prudence and is thereby negligent. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338–39 (5th Cir. 1997). Additionally, a seaman bringing a Jones Act negligence claim must show causation by demonstrating that the employer's negligence "is the cause, in whole or in part, of his injury." *Id.* at 335. The causation requirement is a liberal one, however, placing only a

"featherweight" burden on the plaintiff. *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir. 1975); *see also Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008) (Causation only requires showing that employer negligence "played any part, even the slightest, in producing the injury.")

Hooks moves for summary judgment, asserting that the accident on December 28, 2018, was caused by McCoy's own failure to properly handle a heavy box. To this end it points to the Report of Injury, signed by McCoy and E. STROUD captain Randy Keown on the date of the incident. The report provides as follows:

> [Employee] stated he was carrying a box of chicken weighing about 50lb, he carried it from the [starboard] side store room to lift onto the food bar counter. As he lift[ed] the box he lost grip and when he tried to regain control and catch the box he pulled something in his lower back he stated.

Doc. 63, att. 9 (*sic*). The form further provides that there were no witnesses to the incident. *Id.* During his deposition, McCoy testified that he recalled completing the Report of Injury immediately after the incident and that it was his signature on the form. Doc. 63, att. 8, pp. 119–21, 124. He disavowed the version of events described there, however, and instead alleged that he had provided a different version to James Dale, the Hooks employee who typed out the form. *Id.* at 124–25. He maintained that he had never seen this version of the completed report, and that he did not know how it came to be signed by him. *Id.*

Instead, McCoy recalled a version of events akin to what he alleged in his claim: members of the crew were unloading grocery boxes and an employee named Tim was unhappy at being called away from the engine room to help in the galley. *Id.* at 116–17. McCoy continued:

> So, you know, he was upset the whole time and he was slinging boxes. And he took a box, the first box he took, he acted like it was heavy and he threw it to me and I was ready to catch a heavy box and I had on gloves or something, and it was real light. I said, Man, stop playing. James, the [safety man] said, Stop playing. You know, don't do this. Let's go to work. You all stop joking around, whatever you all doing over there. It was a little hole; he couldn't actually see what was going on.
> So James came around and he asked what the problem was and I said he's throwing boxes. So he stopped and said, Everybody, look, the quicker we can get this in here, everybody can go back to their job.
> So we started again. Tim was really upset, so he just grabbed a whole big box of chicken, which I didn't know, and it looked like the way he had it and he threw it to me, knocked me down. I caught it, my neck hit the steam table and I hit the floor in front of everybody.

*Id.*

Hooks offered Keown, captain of the vessel and co-signatory on the incident report, as 30(b)(6) representative. Keown testified that the only incident report relating to the December 2018 incident was the one in evidence and that he was not aware of any other documents created relating to the incident. Doc. 63, att. 10, p. 79.

Under Louisiana law, the burden of proof of a forgery "falls squarely on he who alleges the forgery." *Succession of Velasquez-Bain*, 415 So.2d 1013, 1016 (La. Ct. App. 4th Cir. 1982); *accord Eymard v. Terrebonne*, 560 So.2d 887, 889 (La. Ct. App. 1st Cir. 1990); *see also Mitchell v. Metco, Inc.*, 2007 WL 7117886, at *2 (S.D. Tex. June 7, 2007) (placing burden on proponent of forgery in maritime case). McCoy admits that it is his signature on the report of injury and offers no competent evidence as to how it would be affixed to that report other than by his own hand. He also fails to account for how the version recorded would differ so much from his version, allegedly witnessed by numerous other crew members whom he has failed to produce. His speculation is insufficient to create

an issue of fact. *See Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment.") (internal quotations omitted).

Furthermore, even if McCoy could show grounds to discredit the report of injury, Hooks has produced evidence disproving his version of events. McCoy identified the alleged offender as Tim, an engineer, and further asserted that Tim's actions so angered another crew member in the assembly line, Rochelle Malvo, that she got in a physical altercation with him. Doc. 67, att. 4, pp. 118, 137–38. The payroll register identifies an engineer named Timothy Bright, but shows that he was not working on the date of the incident. Doc. 70, att. 2, p. 1. The person on board list also shows that Bright was not on the vessel on that date. Doc. 70, att. 1. There is no "Rochelle Malvo" in these records, but the person on board list identifies an "Irene Malveaux" as chief cook. *Id.* According to the record, however, she was also not on the vessel on December 28, 2018. *Id.* Accordingly, McCoy's version of events is discredited.[1] The court accepts the report of injury as the only competent evidence in this matter of the manner in which his alleged injury occurred.

As for this version of events, McCoy attempts to create issues of fact by pointing to testimony suggesting that Hooks should have obtained a JSA for the task of using a crane to load groceries onto the vessel or using an assembly line to transport the boxes to the galley. McCoy, however, was injured while carrying a box of chicken on his own from the

---

[1] Hooks shows that an incident similar to that alleged by McCoy occurred on April 13, 2017, when Bright was reprimanded for throwing a grocery box at the galley crew and McCoy alleged that the box struck him in the head. Doc. 70, att. 4. McCoy's suit, however, arises from injuries that allegedly occurred on December 28, 2018.

galley to the storeroom. He fails to show that any JSA was required for the procedure. McCoy also asserts that Hooks failed to properly staff the vessel, leading to McCoy being onboard past his 14-day hitch at the time he was injured. However, he fails to show any connection between the sufficiency of the crew and his own actions in lifting the box of chicken. McCoy testified that he received "a lot of safety training" when he began working at Hooks. Doc. 63, att. 8, pp. 61–62. He also acknowledged receipt and review of the Safe Job Procedures – Job Hazard Analysis, General Safety Rules, and Management Policy Statement prepared by Hooks. *Id.* at 62–75. He agreed that the Safe Job Procedures reflected his employer's instructions on how to minimize or lessen the risk of being injured when lifting heavy loads. *Id.* at 64–66. Finally, he agreed that Hooks had included instructions on lifting heavy objects in his safety training and that he had "stop work authority" as a Hooks employee, including the right to stop any activity he perceived as unsafe. *Id.* at 66–73. Based on these facts, the court can find no basis on which Hooks's negligence might have caused or contributed to the accident on December 28, 2018. Accordingly, summary judgment should be granted on this claim.

### B. General Maritime Law Unseaworthiness Claim

Independent from a claim under the Jones Act, a seaman has a claim under general maritime law for injuries caused by the unseaworthiness of a vessel. *Beech v. Hercules Drilling Co., LLC*, 691 F.3d 566, 570 (5th Cir. 2012). Such a claim involves a "more demanding standard of causation" than that present for a Jones Act negligence claim. *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988). For an unseaworthiness claim, a plaintiff must show proximate causation by proving "that the

unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Id.*

McCoy asserts summarily that the vessel was unseaworthy by virtue of being undermanned. As shown above, however, he fails to connect the sufficiency of the crew to his own actions in improperly lifting a box of chicken in the galley. Nothing in the allegations or evidence shows that the accident had anything to do with the condition of the vessel. Furthermore, the court is concerned (to put it mildly) with the pressing of this case given clear issues with McCoy's credibility.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 63] will be **GRANTED**.

**THUS DONE AND SIGNED** in Chambers on the 7th day of October, 2022.

*[signature]*

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE